The Honorable Jodie Mahony State Representative 106 West Main Street, Suite 406 El Dorado, AR 71730
Dear Representative Mahony:
I am writing in response to your request for an opinion on the following matter:
 1) Is the presence of four school board members at a meeting necessary to constitute a quorum of a seven member school board?
 2) If a relative of a board member is being considered for an employment contract with the school district, is that board member required to leave the room for the discussion and vote?
 3) If a meeting begins with a quorum of four of the seven board members, and one board member is forced to leave the room for the consideration of employing his brother, is the quorum lost and transaction of business required to cease?
 4) If the aforementioned conditions exist and a quorum is not lost, can the remaining three approve an employment contract on a 3-0 vote?
 5) What is necessary statutory notice to the public that has to be followed to have a legal meeting?
 6) Even if the local board approves the employment (initial or change of status greater than $2500), must the Commissioner of Education provide a written exemption in order for the individual to have a valid employment contract?
 7) Assuming question (6) is answered in the affirmative, if a local board fails to request an exemption from the Commissioner of Education, is the employment contract valid?
RESPONSE
With respect to your first question, A.C.A. § 6-13-619 (Repl. 1999) specifically defines a quorum of the board of directors of a school district as a majority of the total members so that four members of a seven member board is required to make a quorum. With respect to your second question, in my opinion A.C.A. § 6-24-105 as amended by Act 1381 of 2005 clearly requires that the board member leave the meeting room and not be counted as a voting member for the purpose of the vote. With respect to your third question, in my opinion the board has lost a quorum and must cease all business that requires a quorum. With respect to your fourth question, in my opinion a quorum has been lost. With respect to your fifth question, whether reasonable notice for an ordinary meeting has been given is a fact intensive question to be answered on a case-by-case basis. For special or emergency meetings, A.C.A. §25-19-106(b)(2) (Supp. 2003) specifies at least two hours prior to the meeting that notice be given to all media outlets that have requested notice of emergency or special meetings. With respect to your sixth question, independent approval from the Commissioner of Education is mandatory in the situation you describe without which the contract is not effective, valid or enforceable. With respect to your seventh question, as noted in my response to question six, the approval of the Commissioner of Education is mandatory and without such approval the contract is not effective, valid, or enforceable.
Question One: Is the presence of four school board members at a meetingnecessary to constitute a quorum of a seven member school board?
Yes. Arkansas Code Annotated § 6-13-619 specifies that a quorum "shall be a majority of the membership of the board." A.C.A. § 6-13-619(c)(2) (Repl. 1999). A majority of seven board members is four members.
Question Two: If a relative of a board member is being considered for anemployment contract with the school district, is that board memberrequired to leave the room for the discussion and vote?
Yes. In my opinion, the Arkansas Code clearly requires the board member to vacate the meeting room for both the discussion and the vote when a family member as defined by the Arkansas Code is being considered for employment by the school board.
The General Assembly clarified the applicable law recently. The Arkansas Code now specifically states:
 Any If any proposed contract or employment contract is with a family member of a board member or a board member directly or indirectly interested in the proposed contract or employment contract, then the board member shall leave the meeting until the voting on the issue is concluded, and the absent member shall not be counted as having voted.
A.C.A. § 6-24-105(c)(1)(C) as amended by Act 1381 of 2005.[1] The plain and ordinary language of the statute does not leave any room for ambiguity. A board member shall leave the meeting if a contract with a family member is being discussed by the board.
Act 1381 also clarifies the definition of "family member" in the pertinent part as follows:
(A) An individual's spouse;
(B) Children of the individual or children of the individual's spouse;
 (C) A childs The spouse of a child of the individual or the spouse of a child of the individual's spouse;
 (D) Parents of the individual or parents of the individual's the
spouse;
 (E) Brothers and sisters of the individual or brothers and sisters of the individual's spouse[.]
A.C.A. § 6-24-102(12) as amended by Act 1381 of 2005. If the relative in your question is within the definition of "family member" quoted above, the board member has no choice but to leave the meeting room where the employment contract is being discussed. See Op. Att'y Gen. 2001-336.
Question Three: If a meeting begins with a quorum of four of the sevenboard members, and one board member is forced to leave the room for theconsideration of employing his brother, is the quorum lost andtransaction of business required to cease?
Yes. In my opinion, when a board member is removed from both discussion and voting on an issue by leaving the meeting that board member is removed from being considered present for the purpose of establishing a quorum.
As noted above, a quorum of a seven member school board is four members. A.C.A. § 6-13-619. A quorum is "the minimum number of members who must bepresent at the meeting . . . for business to be legally transacted[.]"Robert's Rules of Order Newly Revised 20 (10th Ed. 2000) (emphasis added); see also Black's Law Dictionary 1284 (8th ed. 2004).
The member who has left the room is no longer present. Without the presence of a fourth member of the school board, a seven-member school board will lose a quorum under the plain and ordinary meaning of that word. Additionally, the Arkansas Code states that the board member who vacates the meeting for such a conflict of interest will not be counted as having voted at all. See A.C.A. § 6-13-619(c)(1)(C) (Repl. 1999); and
A.C.A. § 6-24-105(c)(1)(C) as amended. The statute specifies that the member is removed from the meeting and does not count as having cast a vote. A.C.A. § 6-24-105(c)(1)(C) as amended. It is axiomatic that when someone leaves a meeting that the person is no longer present for the meeting. See Op. Att'y Gen. 2001-336. This further persuades me that a quorum would be lost in the situation described above.
Furthermore, when there are no local procedural rules governing an issue such as this, standard rules of parliamentary procedure will apply. See,e.g. Ops. Att'y Gen. 2004-326 and 98-282. If, for example, one of the four school board members left the room on a point of personal privilege, a quorum would be lost and business would cease until a quorum was again present. See generally Roberts Rules of Order Newly Revised
338.
Question Four: If the aforementioned conditions exist and a quorum is notlost, can the remaining three approve an employment contract on a 3-0vote?
As I opined that quorum is lost in the aforementioned conditions, this question is moot.
Question Five: What is necessary statutory notice to the public that hasto be followed to have a legal meeting?
The amount of notice required for a meeting of a public entity to comply with the Freedom of Information Act ("FOIA") depends on whether the meeting is a regular meeting or a special or emergency meeting. A.C.A. §25-19-106(b).
With respect to a normal meeting, the FOIA specifies only that the time and place of the meeting must be furnished to anyone who requests such information.[2] A.C.A. § 25-19-106(b)(1); see also Op. Att'y Gen.2001-012. It is well settled law, however, that notice must be reasonable. Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306
(1950); see also Op. Att'y Gen. 96-074 (opining that notice of a 7.00 a.m. special meeting faxed to the media overnight when it was reasonably known that there would not be someone to receive the fax was improper notice). The intent of the FOIA is that "public business be performed in an open and public manner." Ark. Gazette Co. v. Pickens, 258 Ark. 69,74, 522 S.W.2d 350 (1975). Regular meetings, therefore, may not be scheduled in such a way so as to thwart the intent of the FOIA. Op. Att'y Gen. 95-308; see also Op. Att'y Gen. 92-162. There is an independent requirement that school boards hold all non-emergency meetings after 5.00 p.m. A.C.A. § 6-13-619(a)(2); see also Op. Att'y Gen. 99-014. The question of whether a particular form of notice regarding a regular meeting is a fact intensive question that must be reviewed by an appropriate body on a case-by-case basis. See, e.g. Op. Att'y Gen. 96-074.
With respect to special or emergency meetings, the FOIA requires that all media outlets that have requested such notices be given at least two hours notice "to ensure that the public has a representative" of some form in attendance at the meeting. A.C.A. § 25-19-106(b)(2) (Supp. 2003). Furthermore, the notice must be given in such a way that it is likely to reach the appropriate media organizations and does not amount to an attempt to circumvent the notice requirements of the FOIA. See Op. Att'y Gen. 96-074. The notice of the special or emergency meeting must include the time, place and date of the meeting. A.C.A. §25-19-106(b)(2). As noted above, whether appropriate notice has been given is a fact-intensive question and must be evaluated on a case-by-case basis. Op. Att'y Gen. 96-074.
Question Six: Even if the local board approves the employment (initial orchange of status greater than $2500), must the Commissioner ofEducation[3] provide a written exemption in order for the individual tohave a valid employment contract?
In my opinion, Arkansas Code Annotated Section 6-24-105 as amended requires that the director of the department of education approve all contracts, either initial or a change of status greater than $2,500.00, with the family members of school board members before the contract is valid.
Act 1381 of 2005 specifies that "[t]he provisions of this act shall be applicable to any employment contract entered into with a public educational entity on February 21, 2005, and thereafter." Act 1381 of 2005, § 3. Act 1381 of 2005 amended A.C.A. § 6-24-105, adding the following pertinent language:
 Excluding any renewal of a contract under § 6-17-1506, any change in the terms or conditions of an employment contract, a promotion, or a change in employment status for a family member of a school board member employed by a public educational entity that will result in an increase in compensation of more than two thousand five hundred dollars ($2,500) must be approved in writing by the [Commissioner] of Education before any change in the terms or conditions of the employment contract or promotion or changes in employment status are effective, valid, or enforceable.
A.C.A. § 6-24-105(b)(2)(B) as amended by Act 1381 of 2005.
The plain and ordinary language of A.C.A. § 6-24-105 as amended requires that any initial employment contract or an employment contract with a change of status of two thousand and five hundred dollars ($2,500.00) or more must be approved in writing by the Commissioner. This language is mandatory. See, e.g. Op. Att'y Gen. 2004-333. Absent the written approval of the Commissioner of Education, the contract described in your request for an opinion is not valid.
Question Seven: Assuming question (6) is answered in the affirmative, ifa local board fails to request an exemption from the Commissioner ofEducation, is the employment contract valid?
No. As discussed above written approval of the Commissioner of Education is mandatory. Until a written approval issues pursuant to A.C.A. §6-24-105(b)(2)(B), the contract is not "effective, valid, or enforceable." A.C.A. § 6-24-105 as amended by Act 1381 of 2005.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh
[1] Act 1382 of 2005 contains an emergency clause making it effective as of March 30, 2005, the date it was signed into law by the Governor.
[2] Generally speaking, a school board will hold "regular monthly meetings" in accordance with A.C.A. § 6-13-619(a). A schedule of these regular meetings provided at the beginning of the school year should be sufficient notice for the regularly scheduled meetings. See, generally
Watkins Peltz, The Arkansas Freedom of Information Act at 322 (m m Press, 4th. Ed., 2004). If the board changes the time or place of a meeting on the provided schedule, however, the notice for the changed meeting is no longer valid. See Op. Att'y Gen. 97-327.
[3] Act 1672 of 2005 renamed the "Director" of the Department of Education the Commissioner of Education. The emergency clause included in Act 1672 specifies that the Act became effective on July 1, 2005.